[Crim. No. 384.    Department One.—September 27, 1898.]

THE PEOPLE, Respondent, v. PHILLIP COLLUM, Appellant.

CRIMINAL LAW—ARSON—EVIDENCE—ACCOMPLICE—ACCESSARY.—The uncorroborated evidence of an accessary after the fact to the crime of arson is sufficient to sustain a conviction of the defendant charged therewith. Such an accessary is not an accomplice who aids, abets, and assists in the commission of the crime, or who has advised and encouraged its commission.

ID.—CONFESSION OF CO-CONSPIRATOR—IMPEACHMENT—CONTRADICTORY STATEMENTS.—The confession of a co-conspirator to the effect that he and the defendant had committed the crime of arson with which the defendant was charged, made after the conspiracy had ended, is inadmissible hearsay; nor is such confession admissible for the purpose of impeaching his evidence, when not directly contradictory thereto.

ID.—INFERENTIAL INCONSISTENCY OF STATEMENTS.—The statements of a witness are not admissible for purposes of impeachment, if the inconsistency of the impeaching statements with the evidence of the witness does not appear by direct comparison therewith, but only inferentially, while another inference might be drawn in favor of their consistency.

APPEAL from a judgment of the Superior Court of Yolo County and from an order denying a new trial. E. C. Hart, Judge.

The facts are stated in the opinion of the court.

R. Clark, for Appellant.

W. F. Fitzgerald, Attorney General, and W. H. Anderson, Deputy Attorney General, for Respondent.

GAROUTTE, J.—Defendant and one Shephard were jointly informed against for the crime of arson. Defendant had a separate trial, which resulted in a verdict of guilty of an attempt to commit the crime of arson in the second degree, and now appeals from the judgment and order denying his motion for a new trial.

It is contended that the evidence does not justify the verdict because it rests upon "the uncorroborated testimony of one Shirley, an accomplice in the commission of the crime." If Shir-

ley were an accomplice, there are strong reasons to be urged in support of this contention of defendant. If Shirley were not an accomplice, and the jury believed his testimony, then, when taken in connection with the other evidence in the case, we are not prepared to say that we would disturb the verdict upon the ground of insufficient evidence. Upon examination of the record we find nothing therein even tending to establish the fact that Shirley was an accomplice. An accomplice is one who aids, abets, and assists in the commission of the crime, or, not being present, has advised and encouraged its commission. Shirley did none of these things. He was not connected with the defendant in any way until after the crime was committed. Conceding that under section 22 of the Penal Code he was an accessary, still an accessary is not an accomplice under the law of this State. An accomplice at common law may be said to be an accessary before the fact, but in this State an accessary before the fact is not recognized. The law declares such an one a principal.

Shephard, who was jointly charged with the defendant, had been tried and acquitted at the time of the trial of this case. He took the stand and testified as a witness in defendant's interest. He testified that he and Collum, immediately prior to the alarm of fire, were upon the streets of the city of Woodland, and upon such alarm being given ran to the fire (a distance of about one mile), and assisted in extinguishing it. He further declared that upon the succeeding day he and defendant talked to Shirley about the fire. The remaining portion of his testimony was directed to the stock of wool on hand in the mill at the time of the fire, the profits and losses of the business, and matters of insurance. Upon cross-examination, under objection, he was asked this question by the district attorney: "Did you say to me . . . . 'I have always been a good man. I lived in San Jose, and I could have brought many people from there showing that I was a good man, including the district attorney and other people,' and did you not further say that 'this man [meaning Phil. Collum] dragged me into this thing, and that he has now run away and left the whole matter upon me, . . . . and when you find him I will furnish you facts that will send him to hell?'" The objection was overruled, and the witness answered that he had made no such statement. In rebuttal, the district attorney testified

that the witness did make such a statement to him. That this evidence was most injurious to the defendant is apparent. In effect it is a confession of Shephard that he and the defendant committed the crime.

Even conceding Shephard to have been a co-conspirator, still the evidence was the purest hearsay, for the conspiracy had ended at the time this confession was made. The crime was a thing of the past. (*People v. Dillwood*, 94 Cal. 89.) It follows that its admission can only be supported upon the single theory that it was introduced to impeach the witness. This character of impeachment is allowed when the witness has made previous statements inconsistent with his present testimony. The principles upon which this provision of the statute are grounded, and the occasions when it may be invoked, are considered in the case of *People v. Conkling*, 111 Cal. 623. Comparing the evidence given by the witness with the evidence given by the district attorney detailing the statement made to him by the witness, the impeaching evidence fails to reach the mark. As already suggested, this evidence was hearsay, entirely inadmissible for the purpose of proving a fact, and was of a most damaging character to the defendant. Under such circumstances, its admission for the purpose of impeaching the witness must find plain and solid support in the law. Applying the test, we fail to find such support. The vicious part of the statement made by Shephard is: "I had never committed a crime in my life, but Phil. put me into this. . . . . I will furnish you with facts that will send him to hell." These general and vague statements do not comprise that direct and contradictory evidence demanded by the statute that is necessary for impeachment purposes. To justify the admission of such evidence the two statements must be directly contradictory and inconsistent with each other. In order that one shall form the basis for the admission of the other, this inconsistency must appear upon their face by a comparison of them. If the inconsistency only appears by inference, and another inference may be drawn in favor of their consistency, then the second statement is not admissible for impeachment purposes. The only line of evidence testified to by Shephard in his examination, which even looks toward supporting the admissibility of the evidence of the district attorney, is his statement as to what he and

Collum were doing upon the night of the fire. His impeachment could only extend to the blotting out of this evidence. Yet his evidence in this regard may all have been true, and still his statement have been equally true that "Phil. pulled me into this . . . . I will furnish you with facts that will send him to hell." For these reasons the evidence was not of that character to justify its admission for the purpose of impeachment.

We have examined many other assignments of error relied upon by defendant. The references in his brief to these assignments are made in a somewhat desultory and skeleton manner. Our examination of them has disclosed nothing of a prejudicial character to defendant.

For the foregoing reasons the judgment and order are reversed, and the cause remanded.

Van Fleet, J., and Harrison, J., concurred.