## WALTER LEYERLE v. STATE.

No. 4795.    Opinion Filed July 11, 1925.
(237 Pac. 871.)

H. M. Carr and Carl Henderson, for plaintiff in error.

George F. Short, Atty Gen., and Charles Hill Johns, Asst. Atty Gen., for the State.

EDWARDS, J. For convenience and brevity, the plaintiff in error will be referred to as defendant, as in the court below.

The defendant was informed against in the district court of Garvin county for grand larceny. He was an employee in the freight house of the Santa Fe Railway Company at Pauls Valley, and Jep Clemons was an employee who worked under him. Property shipped on the Santa Fe Railroad and passing through the freight house at Pauls Valley was broken into and considerable stolen. Under a search warrant, the premises of the defendant and Jep Clemons were searched and a large quantity of stolen property recovered. The information charged the defendant with theft of six Royal wagon covers and one Royal wall tent of the value of $73.02. Clemons pleaded guilty, was sent to the penitentiary, and on the trial of the defendant was brought back and testified for the state. The defendant did not take the stand. In the trial of the case, many exceptions were taken by counsel and numerous assignments made in the petition in error. Summarized, the contentions made are as follows: First, error of the court in permitting the state to amend the information after the trial had begun; second, variance between the information and the proof; third, error of the court in admitting incompetent and prejudicial evidence; fourth, errors of law occurring at the trial; fifth, error in the court's instructions. These assignments will be considered in the order presented.

The first assignment referred to an amendment of the

information in the matter of date. The information was filed in March, 1922, and alleged that the crime was committed on the ———— day of June, 1922. After the jury was impaneled, the county attorney proceeded to read the information and to make an opening statement, and on reading the information informed the court that there was a typographical error in charging "1922" instead of "1921," and asked leave to correct the date from 1922 to 1921, which was permitted. An information may be amended in matter of substance at any time before plea, or in matter of form at any time when such can be done without prejudice to the rights of the accused. Section 2512, Comp. St. 1921; Lancaster v. State, 2 Okla. Cr. 681, 103 P. 1065; Rollen v. State, 7 Okla. Cr. 673, 125 P. 1087; Hogue v. State, 9 Okla. Cr. 521, 132 P. 511; Elkins v. State, 29 Okla. Cr. 175, 233 P. 491.

The complaint is made a part of the record and charges the offense to have been in June, 1920. A preliminary was had on such complaint, and defendant was held by the justice of the peace for the offense charged in the complaint. The proof fixed the commission of the offense in June, 1920. So the date being obviously a mere clerical error its correction was a matter of form, and could not have been prejudicial to the defendant.

The second assignment, argued variance between the allegation and proof, is based on the matter of ownership of the property which was the subject of the larceny. The information alleges that the property was in the possession of the Gulf, Colorado & Santa Fe Railway Company, a corporation, and owned and possessed by said company and Joe J. Swann. It is contended that the proof shows that the goods were delivered by the Atchison, Topeka & Santa Fe Railway Company, and that they were shipped to Swann Bros., which had been composed of Joe J. Swann and S. E. Swann; that S. E. Swann had died some 2½

years before, and that he left a widow and child who owned a part interest in the business.

We gather from the record and the admissions in the briefs that the main line of the Santa Fe Railroad is the property of the Atchison, Topeka & Santa Fe Railway Company from the north line of the state to Purcell, and from Purcell south it is owned by the Gulf, Colorado & Santa Fe Railway Company. The Atchison, Topeka & Santa Fe Railway Company also has a line from Lindsay through Pauls Valley to Shawnee and north. Shipments coming in from the north, therefore, come over the Atchison, Topeka & Santa Fe to Purcell, and continue on the Gulf, Colorado & Santa Fe to Pauls Valley. Merchandise shipped to Maysville is then on the Gulf, Colorado & Santa Fe from Purcell until it is redelivered to the Atchison, Topeka & Santa Fe at Pauls Valley for transportation to Maysville. Joe J. Swann, being the surviving member of Swann Bros. and conducting the business, was in legal effect the owner of the business and the possession was in him and the railroad company. In view of section 2560, Comp. St. 1921, an erroneous allegation of the person injured is not material:

Section 2560. "When an offense involves the commission of, or an attempt to commit a private injury, and is described with sufficient certainty in other respects to identify the act, an erroneous allegation as to the person injured, or intended to be injured, is not material." Gunter v. State, 16 Okla. Cr. 476, 185 P. 797.

If the allegation of ownership of stolen property is a material allegation to be proven as charged, such allegation is supported by proof of any legal interest or special ownership less than absolute title. 36 Corpus Juris, § 404; Little v. State, 21 Okla. Cr. 1, 204 P. 305; Carson v. State, 30 Okla. Cr. 438, 236 P. 627.

Complaint is made that the court admitted immaterial

and incompetent evidence on the part of the state which was prejudicial to the defendant. This was evidence of the loss of other property from the freighthouse and the admission in evidence of other stolen property found in the possession of Jep Clemons, and which he admitted was stolen. In this connection it might be well to say that Clemons testified that some two years prior to the occasion in question the defendant had proposed to him that they steal property passing through the freight house, and that arrangements were entered into for that purpose, and pursuant to that arrangement he and the defendant did at various times steal property out of the freight house, and that the property offered in evidence, against which complaint is made, was so stolen. It is settled law, of course, that evidence of different offenses, or offenses of an accomplice with which the defendant was not connected, cannot be used against him, unless the other offense is a part of the transaction on which the prosecution is based, or sheds light upon the intention of the defendant in the commission of the crime for which he is on trial, or shows motive, or scheme of criminal action. It is upon the latter exception, scheme of criminal action, that the state contends the evidence is admissible. Here merchandise was stolen from the freight house in which the defendant was employed. A part of this merchandise was found in the possession of the defendant and a part in the possession of his accomplice. The accomplice testified that it was stolen pursuant to an arrangement between him and the defendant. The evidence therefore tended to show that the defendant had formed a common design with Clemons to commit larcenies from the freight house. In proving the particular larceny charged, the evidence was material and competent as showing motive and plan or scheme of criminal action. Beberstein v. Territory, 8 Okla. Cr. 467, 58 P. 641; Hampton v. State, 7 Okla. Cr. 291, 123 P. 571.

40 L. R. A. (N. S.) 43; Carter v. State, 6 Okla. Cr. 232, 118 P. 264; Brown v. State, 9 Okla. Cr. 382, 132 P. 359.

Upon the fourth assignment, that of errors of law occurring at the trial, it is urged that the trial court, at the close of the state's evidence, did not give sufficient time to the defendant to begin presenting his evidence. The record shows that, after the state rested, the defendant called several witnesses, and then counsel for defendant suggested that it was noon and that the court should take a recess. The court at that time denied the request, stated that the trial had been unduly prolonged, one of the jurors was ill, and that he desired that the case close as soon as possible, but informed counsel that he would be given ample time to examine his witnesses. Thereafter an adjournment for lunch was had, and the defendant was permitted to use all the evidence offered. The conduct of the trial, and the recesses of the court, are in the sound discretion of the trial judge, and unless there appeared some action which was prejudicial, the action of the court in this particular would not constitute any ground for complaint.

Complaint is also made of a remark made by the court in the presence of the jury, while the defendant was waiting to procure some of his witnesses, that could be considered to be prejudicial to the defendant. A search of the record does not disclose such remark, and if made it might be considered a mere pleasantry, having no reference to the case. If the remark was made, and considered prejudicial, the defendant should have made a request that the same be taken by the reporter, and if not taken proof thereof by affidavit made, as provided by statute. Certainly, this court cannot consider an argument made in a brief upon a point where the record is absolutely silent.

Lastly, it is contended that the court erred in failing to give certain requested instructions. These requests go

to the matter of ownership and possesssion of the property which was the subject of the larceny and the admission of evidence tending to show other larcenies. They carry out the theory of the defendant that there was a variance between the allegation in the information as to ownership and possession and the proof, but for the reasons given in the former part of this opinion, the refusal of these requests was not error.

We have examined all the arguments made, and find no reversible error. The case is affirmed.

BESSEY, P. J., and DOYLE, J., concur.